IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARCUS ANTONIO GRUBBS,    )
    )
    Petitioner,    )
    )
v.    )    CASE NO. 1:22-cv-632-ECM
    )    [WO]
UNITED STATES OF AMERICA,    )
    )
    Respondent.    )

## MEMORANDUM OPINION and ORDER

Marcus Antonio Grubbs ("Grubbs"), a federal inmate proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 challenging his conviction in *United States v. Grubbs, Case No. 1:20-cr-25-ECM.*[1] (Doc. 1). Upon review of the parties' submissions and other relevant portions of the record in accordance with Rule 8(a) of the *Rules Governing Section 2255 Proceedings*, the Court concludes that an evidentiary hearing is not warranted and that Grubbs' § 2255 motion is due to be DENIED and DISMISSED with prejudice.

## I. GRUBBS' CRIMINAL PROCEEDINGS

Grubbs was indicted in February 2020 on five firearm and controlled-substance offenses. (*See* Crim. Doc. 1). In September 2020, pursuant to a written plea agreement, Grubbs pleaded guilty to Count 2, possession of a stolen firearm in violation of 18 U.S.C. § 922(j); and Count 4, possession of a stolen firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). (Crim. Docs. 27, 28). In consideration of Grubbs'

---

[1] All citations to the docket in this action will be denoted as "Doc." All citations to the underlying criminal action will be denoted as "Crim Doc."

guilty plea, the Government agreed to move at sentencing for a one-level reduction in his offense level for acceptance of responsibility and for dismissal of the remaining three counts in the indictment. (Crim. Doc. 27 at 2–3).  Grubb's plea agreement contained a waiver of "any and all rights . . . to appeal the conviction or sentence" and "the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255," except for claims based on ineffective assistance of counsel or prosecutorial misconduct. (Crim. Doc. 27 at 6–7).

At the sentencing hearing, the Court granted the Government's motion for a reduction in Grubbs' offense level for acceptance of responsibility, dismissed the remaining three counts in the Indictment, and sentenced Grubbs to 157 months' imprisonment on Counts 2 and 4. Crim. Doc. 46.  Grubbs timely appealed (Crim. Doc. 49), and the Eleventh Circuit affirmed based on the appeal waiver in his plea agreement, *see United States v. Grubbs*, 858 F. App'x 336 (11th Cir. 2021 (per curiam).  Grubbs' petition for writ of certiorari to the United States Supreme Court was denied (Crim. Doc. 61), and he timely filed the instant § 2255 motion.

## II.  GRUBBS' § 2255 MOTION

Grubbs' § 2255 motion asserts one claim of ineffective assistance of counsel against Cecilia Vaca, who represented Grubbs from his initial arrest and arraignment through sentencing.  In an affidavit supporting his claims, Grubbs alleges he told Ms. Vaca that his confession and other incriminating statements were induced by threats from law enforcement to arrest his mother, uncle, and girlfriend; that his mother witnessed these threats; and that she was willing to testify about them. (Doc. 2 at 6–7).  He further claims

2

that Ms. Vaca did not contact his mother about his coerced confession or whether Grubbs was aware of the firearms and drugs in their homes. (*Id.* at 7). Thus, he contends Ms. Vaca advised and assisted him into "falsely" pleading guilty without determining whether Grubbs "knowingly" possessed the firearms and drugs at issue. (*Id.*). Finally, Grubbs claims that, because he did not knowingly possess these items, if Ms. Vaca had not erroneously advised and assisted him, he would have gone to trial and "put the Government to its burden of proving that [he] 'knowingly' possessed the firearms and drugs found in my friends['] and family members['] homes." (*Id.*) [2]

Grubbs also filed an affidavit purportedly signed by his mother under penalty of perjury.[3] (Doc. 2 at 9–10). She attests to having witnessed law enforcement's threats to take her to jail if Grubbs did not confess to owning the firearms found at her house and his uncle's house. (*Id.* at 9). She also states that Ms. Vaca never contacted her about the circumstances of Grubbs' confession. (*Id.* at 10).

In response to Grubbs' motion, Ms. Vaca filed an affidavit denying that she failed to investigate whether his confession was false or obtained in violation of the Fifth

---

[2] In his memorandum supporting his petition, Grubbs asserts that Ms. Vaca did not investigate whether Grubbs knew he was barred from possessing firearms. (Doc. 2 at 2, para 3). In listing his convictions on his petition, Grubbs wrote, "Possession of a firearm by a convicted felon in furtherance of a drug trafficking crime." (Doc. 1 at 1). Although Grubbs' indictment included a charge for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g), Grubbs did not plead guilty to that charge. And even though this specific charge was not addressed at Grubbs' plea hearing, Grubbs said he knew he was in possession of guns or that they were in his home and testified, "I just took the charge because I was a felon anyway with a gun." (Crim. Doc. 56 at 18:4–14).

[3] This affidavit is not notarized, and the signature on the affidavit is strikingly similar to Grubb's signature on his motion and affidavit. (*Compare* doc. 1 at 13, *with* doc. 2 at 8, 10).

Amendment and whether he had actual, constructive, or joint possession of the firearms and drugs found in his friends' and relatives' homes.[4] (Doc. 7 at 2).

### III.  LEGAL STANDARD

**A.  General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under § 2255 are limited.  A prisoner may obtain relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "[R]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.  Ineffective Assistance of Counsel Claims**

A claim of ineffective assistance of counsel is evaluated under the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984).  An attorney is considered constitutionally ineffective if (1) his or her "performance was deficient" and (2) that "deficient performance

---

[4] Despite Grubbs' allegations that he did not knowingly possess the firearms and drugs and that he "falsely" pleaded guilty, in his request for relief, he does not ask that his guilty plea be vacated so he can proceed to trial.  He asks that he be allowed to "plead anew." (Doc. 1 at 13).

prejudiced the defense." *Strickland*, 466 U.S. at 687; *see Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *Chandler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). Scrutiny of counsel's performance is highly deferential, and "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable." *Chandler*, 218 F.3d at 1314 (second alteration in original) (quoting *Strickland*, 466 U.S. at 689).

Under the prejudice prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, the prejudice requirement centers on whether counsel's constitutionally deficient performance affected the outcome of the plea process—that is, the defendant must demonstrate a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020). "Surmounting *Strickland*'s high bar is never

an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." *Martin*, 949 F.3d at 667 (quoting *Lee v. United States*, 582 U.S. 357, 368–69 (2017)).

Unless a petitioner satisfies both prongs of the *Strickland* test, relief must be denied. *Strickland*, 466 U.S. at 687.  The Court "need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1293 (11th Cir. 2022) (quoting *Ward v. Hall*, 592 F.3d 1144 1163 (11th Cir. 2010)).

## IV.  DISCUSSION

### A.    Grubbs' Plea Hearing

With Grubbs' consent, his plea hearing was conducted by videoconference before United States Magistrate Judge Kelly Fitzgerald Pate.[5] (Crim. Doc. 56 at 2).  After Grubbs was sworn in, Judge Pate reminded him that he had taken an oath to tell the truth at the hearing. (*Id.* at 6:7–20).  Judge Pate then explained she could accept his guilty plea only after determining that it was made freely and voluntarily and supported by a factual basis. (*Id.* at 7:3–9).  She asked Grubbs if he was fully satisfied with the counsel, representation, and advice given to him by his attorney, and he replied, "Yes, ma'am." (*Id*. at 8:25–9:3). Judge Pate explained that a "guilty plea admits the truth of the charges," and she explained the rights Grubbs was giving up by pleading guilty instead of going to trial. (*Id.* at 10:9–

---

[5] Grubbs signed consent and waiver forms to conduct the plea hearing before a United States Magistrate Judge and to conduct it by videoconference, and Judge Pate confirmed his signature, as well as his desire to proceed before her by videoconference, at the beginning of the plea hearing. (Crim. Doc. 56 at 2–6).

11:9). At each step of the way, Grubbs acknowledged his understanding of Judge Pate's explanations. (*Id.*).

After verifying that Grubbs had signed his plea agreement, Judge Pate asked Grubbs if he had an opportunity to discuss the agreement with his attorney before signing. (*Id.* at 11:24–12:3). Grubbs confirmed that he did and said he understood its terms. (*Id.* at 12:4–12:10). Judge Pate then asked, "[A]re you pleading guilty of your own free will and because you are guilty?" (*Id.* at 12:15–16). Grubbs responded, "Yes, ma'am. My own free will." (*Id.* at 12:17). After setting forth the limits of punishment for each offense, Judge Pate explained sentencing, including that his guidelines range could not be determined until a presentence report was completed and that the Court could impose a sentence greater or lesser than the guidelines range. (*Id.* at 13:12–15:16). Grubbs acknowledged that he understood and had discussed this with his attorney. (*Id.* at 15:17–19). The Government then set forth the elements of each offense that would have to be proven at trial (*id.* at 16:21–17:19), and Grubbs had the following exchanges with his attorney to establish a factual basis for his plea:

> MS. VACA: Okay. So the first question I'm going to ask you about is your possession of a stolen firearm. Mr. Grubbs, do you admit that on or around December 3rd, 2015, you knowingly possessed several firearms that are described in greater detail in Count 2 of your indictment?
>
> THE DEFENDANT: I did not trust the word of a loyal friend, but, you know, when it came, I just took the charge because I was a felon anyway with a gun.
>
> MS. VACA: But you knew that you were in possession or they were in your home, correct?
>
> THE DEFENDANT: Correct.

(*Id.* at 18:4–14).

> MS. VACA: I guess what I'm asking you is that the firearms -- you discussed with the agents about these firearms and how they were acquired and that you had reason to believe they might be stolen?
>
> THE DEFENDANT: Yeah, correct. Correct.
>
> MS. VACA: Right. And so -- and now the government has actually given us evidence that those firearms were, in fact, stolen prior to you having them, right?
>
> THE DEFENDANT: Right. Correct.

(*Id.* at 19:15–23). Grubbs then admitted a second time, in response to questioning by Judge Pate and Ms. Vaca, that he knew the guns identified in Count 2 of the indictment were in his home and that he was "in knowing possession of a firearm." (*Id.* at 20:8–22). A similar exchange occurred concerning Count 4, and Grubbs admitted his possession of the firearms was in furtherance of his intent to distribute cocaine. (*Id.* at 20:23–21:3).

Judge Pate next inquired whether Grubbs understood everything up to that point in the hearing, including the plea agreement, the rights he was giving up, the charges against him, potential consequences, sentencing guidelines, and plea agreement, and Grubbs confirmed that he did. (*Id.* at 21:20–25). In response to Judge Pate's questions, Grubbs affirmed again that he was "pleading guilty freely and voluntarily," that it was "in [his] best interest to do so," and that he was not denying his guilt. (*Id.* at 22:4–17).

Grubbs then represented to the Court that no one had threatened, forced, coerced, or intimidated him to plead guilty; that he had enough time to talk to his attorney; that he was satisfied with the way she represented him; and that he had told the truth at the plea hearing. (*Id.* at 22:18–23:14). Finally, Grubbs expressed his agreement with Judge Pate's finding

that his plea was knowing and voluntarily, and Judge Pate accepted his guilty plea. (*Id.* at 23:20–24:9).

## B.     Grubbs' Ineffective Assistance of Counsel Claim

As set forth above, Grubbs' claim against Ms. Vaca is based on an alleged failure to investigate before advising him to plead guilty.  As an initial matter, Grubbs has failed to state what, if anything, further investigation would have revealed.  Grubbs indicates he had already told Ms. Vaca that he confessed because the police threatened to take his family to jail if he did not admit to owning the stolen firearms found in their homes and that his mother was willing to testify about the threats.  However, he has identified no additional facts or evidence that could have been discovered through, for example, speaking to his mother which would have changed Ms. Vaca's recommendation as to his guilty plea or to change his mind about entering the plea.  Therefore, Grubbs has failed to allege sufficient facts that, if proven, would overcome the "'strong presumption' that counsel's performance was reasonable." *Chandler*, 218 F.3d at 1314 (second alteration in original) (quoting *Strickland*, 466 U.S. at 689); *see also Strickland*, 466 U.S. at 690 (stating that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

Additionally, Grubbs focuses on whether he "knowingly" possessed firearms, but any claim based on this argument is directly contradicted by the plea agreement and his testimony at the plea hearing.  By signing the plea agreement, Grubbs admitted the truth of the allegations in the Indictment and specifically admitted that he "knowingly possessed" the firearms, that he knew or had reason to believe they were stolen, and that he did so in

9

furtherance of a controlled substance crime. (Crim. Doc. 27 at 5–6).  At the plea hearing, he testified that he had time to discuss the plea agreement with his attorney before signing it and that he understood its terms.  He admitted again that he knowingly possessed the firearms, knew they were in the homes of his friends and families, had reason to believe they were stolen, and possessed the guns in furtherance of an intent to distribute cocaine. He also testified more than once that he understood he was admitting the truth of the charges against him, that he was pleading guilty voluntarily and of his own free will, and that he had not been threatened, intimidated, or coerced to plead guilty.  Finally, despite what he now claims, he testified twice that he was satisfied with Ms. Vaca's representation of him, and he affirmed several times that his testimony during the plea hearing was true.

Courts apply a strong presumption that statements made by a defendant during his plea colloquy are true. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014); *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 582 U.S. at 369 (emphasis in original).  A defendant's representations during a plea proceeding and a court's findings when accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Applying a strong presumption that Grubbs' under-oath statements at the plea hearing were true, coupled with his failure to allege sufficient facts about what further investigation would have revealed, the record does not support a finding that no competent counsel

10

would have advised Grubbs to plead guilty.  As a result of his guilty plea, Grubbs received a reduction in his criminal offense level based on his acceptance of responsibility, and three of the five pending charges were dismissed.  Thus, it appears that Ms. Vaca's recommendation to plead guilty was "reasonable considering all the circumstances." *See Strickland*, 466 U.S. at 688.

Accordingly, because Grubbs has not established that Ms. Vaca was deficient in her representation of him, his ineffective assistance of counsel claim fails, and his § 2255 motion is due to be denied. *Strickland*, 466 U.S. at 687 (requiring both deficiency and prejudice prongs to be met).  Because Grubbs has not shown deficient performance, the Court need not address prejudice. *See Jennings*, 55 F.4th at 1293.[6]

## C.     Certificate of Appealability

If the Court issues a ruling adverse to the § 2255 movant, the Court must address whether to grant the movant a certificate of appealability ("COA"). *See* Rule 11(a) of the *Rules Governing Section 2255 Proceedings*; *see also* 28 U.S.C. § 2253(c)(1)(B).  To be

---

[6] Although the Court need not address the prejudice requirement of Grubbs' ineffective assistance of counsel claim, the Court observes that the only support he offered to establish prejudice is his statement that he would have gone to trial and required the Government prove he "knowingly" possessed the firearms and drugs if Ms. Vaca had not erroneously advised him. (Doc. 2 at 7).  Not only does his statement contradict his plea hearing testimony (*see* doc. 27 at 2–3), but a defendant's self-serving, conclusory statement is insufficient in itself to show prejudice in the context of a guilty plea. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992) (per curiam).

Additionally, Grubbs filed a "sur-reply" to the Government's response, in which he appears to argue, for the first time, that the Government did not have standing to prosecute him in his underlying criminal proceeding and that this Court did not have jurisdiction to convict him. (*See* doc. 13 at 2–3).  Grubbs did not present claims based on standing or jurisdiction in his § 2255 motion.  However, whether the Court has jurisdiction may be raised at any point in the case.  Upon review of Grubbs' claim that the Court does not have jurisdiction because there was no injury and thus no case or controversy, his argument is wholly without merit.  Grubbs was charged with, and pleaded guilty to, violations of 18 U.S.C. §§ 922(j) and 924(c).  This Court has jurisdiction over prosecutions brought pursuant to those federal statutes.

entitled to a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). "[A] substantial showing of the denial of a constitutional right . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (parenthetical in original) (quoting *Barefoot*, 463 U.S. at 893 & n.4).

Applying this standard, the Court finds that Grubbs has failed to show that reasonable jurists could debate whether his § 2255 motion "should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" *see Slack*, 529 U.S. at 484, and he has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2); *Barefoot*, 463 U.S. at 893. Consequently, the Court concludes that a COA is not warranted.

## V. CONCLUSION

Accordingly, for the reasons stated, it is

ORDERED as follows:

1. Grubbs' 28 U.S.C. § 2255 motion is DENIED;

2. The Court DENIES a certificate of appealability;

3. This case is DISMISSED with prejudice;

4. All pending motions are DENIED as moot, and all pending deadlines are TERMINATED.

A separate Final Judgment will be entered.

12

DONE this 30th day of March, 2026.

                    /s/ Emily C. Marks

EMILY C. MARKS
UNITED STATES DISTRICT JUDGE